Kent and Cindy MOSIER, Appellees,

v.

OKLAHOMA PROPERTY AND CASU-
ALTY INSURANCE GUARANTY
ASSOCIATION, Appellant.

No. 78814.

Supreme Court of Oklahoma.

Dec. 20, 1994.

As Corrected Jan. 3, 1995.

James L. Percival, Kim Daniel Parrish, Derryberry, Quigley, Parrish, Solomon & Blankenship, Robert N. Naifeh, Jr., Oklahoma City, for appellant.

Brian Husted, Edmonds, Cole, Hargrave, Givens & Witzke, Oklahoma City, for appellees.

SUMMERS, Justice:

An injured worker received compensation benefits. He also reached a settlement with a manufacturer/defendant in a separate District Court proceeding involving the same injuries. The manufacturer's liability insurer failed, and the worker looks to the Oklahoma Property and Casualty Insurance Guaranty Association. The only question before us is whether the Association is entitled to setoff the workers' compensation benefits received by the worker against its obligation to pay. We conclude that such a setoff is allowed by statute.

Kent Mosier was seriously injured while working on an oil and gas drilling rig manufactured and sold by Parker Drilling Company, a subsidiary of OIME, Inc. He filed a workers' compensation claim against his employer. In the District Court, he filed a products liability suit against OIME, the manufacturer of the rig, and against American Standard, Inc., the manufacturer of the transmission of the rig motor.

A settlement was reached in 1987. It required that Mosier be paid a total of $300,-000.00. American Standard was to pay $30,-000.00 and OIME, through its insurer, Integrity Insurance Company, was to pay the remaining $270,000.00. American Standard paid its portion, but because OIME's insurer became insolvent the $270,000.00 remained unpaid.

Mosier filed a claim with the Oklahoma Property and Casualty Insurance Guaranty Association pursuant to 36 O.S.1991 § 2001 et seq. The claim was denied because statute required the Mosiers to first file with the guaranty association in the home state of the insurer. Integrity's home state was Texas. Mosier then filed a claim with the Texas Guaranty Association which was settled for $75,000.00.[1] Mosier also received $68,159.66 in workers' compensation benefits.

Mosier next refiled against the Oklahoma Guaranty Association under the Oklahoma Act, seeking $150,000.00, the statutory cap per occurrence. The parties submitted the case on stipulated facts and cross motions for summary judgment. The trial court granted summary judgment to Mosier for $150,-000.00. The court subsequently amended the judgment to include post-judgment interest. The Guaranty Association perfected this appeal.

The Court of Appeals affirmed the trial court in part and reversed in part. It agreed that the cap under applicable Oklahoma law was $150,000.00. It held that this amount must be reduced by the amount the Texas Association could have been required to pay, which was $100,000.00. The court went on to hold that the $30,000.00 received from the American Standard was not to be set off against the amount owed by the Association, because the settlement of $30,000.00 was separate and distinct from the settlement with the insolvent insurer. The court also ruled that workers' compensation benefits were not required to be set off against the amount owed by the Guaranty Association. Thus, in light of the Texas Guaranty Association's payment, the trial court's judgment was reduced from $150,000.00 to $50,000.00. Mosier did not seek certiorari. The Guaranty Association did, and its petition was granted by this Court.

The only issue raised in the petition for certiorari, and thus the only thing reviewable by this Court, is whether the Guaranty Association is entitled to setoff for the workers' compensation benefits paid to Mosier. In its petition for certiorari the Guaranty Association argues that the Court of Appeals' decision was contrary to our recent decisions in *Oglesby v. Liberty Mutual Ins. Co.*, 832 P.2d 834 (Okla.1992) and *Welch v. Armer*, 776 P.2d 847 (Okla.1989). It also claims that the appellate court erroneously relied on Louisiana law which had been specifically rejected by this Court in *Welch*.

The Oklahoma Property and Casualty Insurance Guaranty Act was enacted in 1980. The stated purpose behind its enactment is:

[T]o provide a mechanism for the payment of covered claims under certain insurance

___

1. At the time, Texas' Guaranty Act provided a cap of $100,000.00.

policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

*See* 36 O.S. 1981 § 2002. As the severity of the problem of insurance companies becoming insolvent increased, all fifty states enacted statutes similar to Oklahoma's legislation to protect "victims from suffering the hardship of uncompensated losses." Roberts, *Insurance Company Insolvencies and Insurance Guaranty Funds: A Look at the Nonduplication or Recovery Clause,* 74 Iowa L.R. 927, 928 (1979).

The dispositive provision of the Act, insofar as this case is concerned, is found at 36 O.S.1991 § 2012(A), and reads as follows:

A. Any person having a claim against an insurer under any provision of an insurance policy other than a policy of the insolvent insurer which is also a covered claim shall be required to first exhaust his rights under such policy. *Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such other insurance policy.* The provisions of this subsection shall not apply to uninsured motorist coverage. (emphasis added)

The Association urges that this section, as interpreted by *Oglesby,* requires setoff of the workers' compensation benefits received.

In *Oglesby,* we were faced with several questions certified by a federal district court concerning the interpretation of the Guaranty Association Act, 36 O.S.1981 § 2001 et seq.[2] One question addressed was whether 36 O.S.1981 Section 2012(A) required setoff for all other insurance benefits received. We held that before recovery may be made from the Oklahoma Guaranty Association, a claimant must exhaust all covered claims against solvent insurers. Further, if any money is recovered from these insurers, that amount must be credited against the Oklahoma Guaranty Association's $150,000 statutory cap. In

dicta, we stated that the statute likewise applied to require an offset for whatever workers' compensation benefits have been received. *Id.* at 843–44 n. 41.

There are, to be sure, cases from some jurisdictions which apply comparable setoff statutes only where to do so would prevent a plaintiff's double recovery. *Connecticut Ins. Guaranty Ass'n v. Union Carbide Corp.,* 217 Conn. 371, 585 A.2d 1216 (1991); *Washington Ins. Guaranty Ass'n v. McKinstry Co.,* 56 Wash.App. 545, 784 P.2d 190 (1990); *Senac v. Sandefer,* 418 So.2d 543 (La.1982). But we are unable to find any language in our Insurance Guaranty Association Act that would support such a reading of § 2012(A). Other jurisdictions recognize the statutory setoff without regard to whether double recovery is an issue, based simply on the language of the statute. *Hawkins v. Kentucky Ins. Guar. Ass'n,* 838 S.W.2d 410 (Ky.1992); *Rinehart v. Hartford Cas. Ins. Co.,* 91 N.C.App. 368, 371 S.E.2d 788 (1988); *Ferrari v. Toto,* 9 Mass. App.Ct. 483, 402 N.E.2d 107 (1980).

■ Our *Oglesby* ruling relied on our earlier case of *Welch v. Armer, supra.* Footnote 41 in *Oglesby* is squarely on point. Here, the Oklahoma Guaranty Association claims it is entitled to setoff for workers' compensation benefits received by Mosier. In *Oglesby* we said that setoff is required if any funds are obtained from solvent insurers by the claimant for covered claims. Mosier obtained $68,159.66 in workers' compensation benefits. In obedience to Section 2012(A) and *Oglesby,* the Oklahoma Guaranty Association is entitled to have this amount credited against the statutory funds remaining available. By this we mean the amount left within the statutory cap after the setoff of the funds available from the Texas Guaranty Association, as has been determined by the Court of Appeals.

■ Several issues raised in the petition in error and addressed by the Court of Appeals were not raised by the petition for certiora-

**2.** We realize that this Act was recodified in 1991; however, Oglesby dealt with several versions of

the Act prior to its recodification.

ri.[3] Mosier did not file a petition for certiorari nor a response to the Association's petition for certiorari. No party has, on certiorari, requested that this Court review these other issues. As such the resolution of those issues by the Court of Appeals is not subject to our review. *Ford v. Ford*, 766 P.2d 950, 955 (Okla.1988).[4]

With regard to the decision on setoff of workers' compensation benefits, the Court of Appeals' opinion is vacated in part and replaced by this one. Otherwise the opinion of the Court of Appeals stands as the settled law of the case. The judgment of the trial court is reversed, and the case is remanded to the District Court for entry of judgment consistent with this writing.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, OPALA, KAUGER and WATT, JJ., concur.

ALMA WILSON, J., concurs in part, dissents in part.

HARGRAVE, J., disqualified.

**3.** Those issues not raised in any petition for certiorari, and upon which we express no opinion, include: (1) whether the applicable limit is that in the 1987 amendment to Section 2007, (2) whether the claimant fully exhausted remedies available through Texas' Guaranty Association by settling for less than the statutory limit, and (3) whether the $30,000.00 paid by the American Standard should have been set off against the liability of the Oklahoma Guaranty Association.

**4.** We recognize that *Hough v. Leonard*, 867 P.2d 438 (Okla.1993) changed the previous rule regarding certiorari petitions so as to make it unnecessary for the "winning" party to file a certiorari petition to have a review where the Court of Appeals has left issues unaddressed. Here, the Court of Appeals addressed all the issues raised by the parties on appeal, reducing Mosier's award by two thirds, and thus we are not confronted with *Hough's* applicability.