2007 OK CIV APP 43

**Polly Rae DUTY, Petitioner/Appellee,**

v.

**Clinton Neal DUTY,
Respondent/Appellant.**

**No. 103,095.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

Feb. 1, 2007.

Certiorari Denied April 26, 2007.

Larry Ehrman, Timothy J. Gungoll, Gungoll & Ehrman, Enid, OK, for Petitioner/Appellee.

Katresa J. Riffel, Mitchel, Gaston, Riffel & Riffel, P.L.L.C., Enid, OK, for Respondent/Appellant.

BAY MITCHELL, Vice–Chief Judge:

¶ 1 Respondent/Appellant Clinton Neal Duty (Husband) appeals from a trial court order finding his unvested stock options were marital property. The court further ordered that Petitioner/Appellee Polly Rae Duty (Wife) was entitled to one-third of the net difference between the market value and the purchase price of those stock options if he chose to exercise them. Husband contends the stock options were future income because they were not vested at the time the Decree of Dissolution of Marriage was filed, and the options had no value and could not be exercised unless several contingencies were satisfied. Thus, he asserts the options were not marital property and the trial court did not have the authority to order a division of his future income.

¶ 2 The trial court is vested with wide discretion in the division of marital estates, and the lower court's findings will not be disturbed on review unless they are clearly contrary to the weight of the evidence or an abuse of the trial's discretion. *Carpenter v. Carpenter*, 1983 OK 2, ¶ 24, 657 P.2d 646, 651. Husband asserts we should review this order *de novo*, however, because the court ruled on an issue of law. *National Diversified Bus. Servs., Inc. v. Corporate Fin. Opportunities, Inc.*, 1997 OK 36, ¶ 9, 946 P.2d 662, 666 n. 18. We agree the question of whether unvested stock options can be marital property subject to division in Oklahoma is a legal question subject to *de novo* review. As an issue of first impression in Oklahoma, we conclude that the unvested stock options are subject to division as marital property. We also find the court did not abuse its discretion in the division of those stock options.

¶ 3 The division of marital property is governed by 43 O.S.2001 § 121, which provides in relevant part:

As to such property, whether real or personal, *which has been acquired by the parties jointly during their marriage,* whether the title thereto be in either or both of said parties, the court shall, . . . make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof.

*Id.* (emphasis added). "Jointly-acquired property" for the purposes of this provision is property that is accumulated by the joint industry of both spouses during the marriage. *Standefer v. Standefer*, 2001 OK 37, ¶ 15, 26 P.3d 104, 108. Property acquired during the marriage is presumed to have been jointly acquired, and the party seeking to have property categorized as separate property has the burden of proof. *Id.* On the contrary, future earnings are not marital property because they have not been acquired during the marriage. *Mocnik v. Mocnik*, 1992 OK 99, ¶¶ 21–22, 838 P.2d 500, 505 (goodwill of medical practice is not marital property because it depended on future earnings).

¶ 4 The question of whether unvested or contingent stock options can be classified as marital property has not been addressed in Oklahoma. However, in *Ettinger v. Ettinger*, 1981 OK 130, ¶ 10, 637 P.2d 63, 65, our Supreme Court held that *future stock options that were not even in existence* at the time of the divorce decree could not be classified as marital property. The trial court order allowed Wife to receive half of any stock options Husband might acquire in the future. *Ettinger*, ¶ 2, 637 P.2d at 64. The Supreme Court held the trial court did not have power to divide these options because they did not exist at the time of the divorce and, thus, were not acquired jointly during the marriage. *Ettinger*, ¶ 10, 637 P.2d at 65. The options awarded to Husband in the instant case are distinguishable, however, because they were actually granted to Husband during the marriage. *Ettinger* did not determine whether *existing but unvested stock options* would be divisible as marital property, and does not control this appeal.

¶ 5 In the similar area of pensions, the Oklahoma Supreme Court has stated that it is irrelevant whether the pension was unvested or contingent:

In addressing this issue, we do not deem it significant whether the pension is "vested" in the sense that it is now due and owing, whether it is conditional or contingent upon continued employment for a prescribed period or terminable upon the occurrence nor non-occurrence of some future event. In any of these events, *it is a valuable right which has been purchased through joint efforts of the spouses to the extent that it has been acquired or enhanced during the marriage, and as such becomes jointly acquired property during the marriage.*

*Carpenter*, ¶ 23, 657 P.2d at 651 (emphasis added & internal citations omitted). This reasoning applies with equal force to stock options, as long as they are acquired during the marriage and purchased by the joint effort of the spouses. As with retirement benefits, the fact that the entitlement to stock options depends upon contingencies

does not deprive the options of their nature as marital property. We determine stock options can be marital property even if they are unvested at the time of the divorce decree and contingent upon conditions such as continued employment.

¶ 6 This conclusion is in accord with a majority of other jurisdictions that have considered whether unvested stock options are marital property. *Bornemann v. Bornemann,* 245 Conn. 508, 752 A.2d 978, 985–86 n. 4 (1998) (and cases cited therein) (comparing stock options to pension benefits to find unvested stock options were marital property subject to equitable division); *Warner v. Warner,* 46 S.W.3d 591 (Mo.App.2001) (unvested stock options were marital property), Annot., 46 A.L.R.4th 640 (1986), *Divorce & Separation: Treatment of Stock Options for Purposes of Dividing Marital Property.*

¶ 7 Here, Husband's employer granted him the right to purchase 20,000 shares of stock at the price of $22.50 per unit by written agreement on February 10, 2005. These options would vest in one-third increments on that date for the next three years if Husband was still an employee.[1] The trial court held that even though the options were not vested, they were marital property. Husband asserts, however, that the stock options were offered to him as a key employee as an incentive to remain employed with the company for the three years of the vesting period. The Chief Financial Officer of Hiland Partners, Ken Maples, testified the stock had no value at the trial and would not have any value until the options vested. Husband contends this makes the options future income.

¶ 8 The evidence was undisputed, however, that the options were granted during the marriage and Husband had a right to purchase them once they vested. Ken Maples testified that Husband was considered a key employee, and there was evidence that he was given the stock options partly because of his skill, education and experience. Husband gained these attributes during the marriage with Wife's assistance. Wife contributed to

the marital estate by helping with the children and the house. She packed and moved the marital home at least nine times during the 19 years of the marriage while Husband moved ahead for his job. Wife put aside her career for Husband's career. *See Warner,* 46 S.W.3d at 602 (evidence showed husband's expertise was developed during marriage and contributed to indirectly by Wife; employer recognized that expertise as substantial factor in granting options, so options were marital property). The court found Husband was entitled to two-thirds of the stock options, and Wife was only entitled to one-third because Husband had to continue to work to make the options vest. The court order finding the stock options were marital property and dividing the options was based on the evidence and was not an abuse of discretion.

¶ 9 AFFIRMED.

ADAMS, J., and JOPLIN, P.J., concur.

---

1. Employer granted the options to Husband on February 10, 2005. Wife filed for dissolution near the end of April 2005. Thereafter, the couple tried unsuccessfully to reconcile for a few months. Thus, the court properly found the op-

tions were granted during the marriage. They were also together for at least three to four months during the year Husband needed to work for the first set of options to vest.